## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHERRIE GRANT, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br> v.<br><br>GREAT WOLF RESORTS, INC.,<br><br>        Defendant. | **Case No. 1:26-cv-886**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Sherrie Grant brings this action on behalf of herself, and all others similarly situated against Great Wolf Resorts, Inc. ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Defendant has been nickel and diming visitors to its Great Wolf Lodge Williamsburg indoor water park, on its website in violation of "Virginia's Mandatory Fees or Surcharges Law," Va. Code Ann. § 59.1-608. Whenever a visitor selects an admission ticket to the indoor waterpark on the website www.greatwolf.com/williamsburg he or she is quoted a fee-less price, only to be ambushed by a $9.99 "Amenity Fee" at checkout after clicking through the various screens required to make a purchase. This cheap trick has enabled Defendant to swindle substantial sums of money from its customers.

2. To stop this hustle, Virginia enacted its Mandatory Fees or Surcharges Law, Va. Code Ann. § 59.1-608, which prohibits the "advertise[ment] or display [of] a price for goods or

1

services without clearly and conspicuously[1] displaying the total price, which shall include all mandatory fees or surcharges." Va. Code Ann. § 59.1-608(A). "Mandatory fees or surcharges" includes any additional fee or surcharge that must be paid in order to purchase the good or service being advertised." Va. Code Ann. § 59.1-607. Consumers injured by a violation of Virginia's Mandatory Fees or Surcharges Law are entitled to the same remedies as those afforded under the Virginia Consumer Protection Act (VCPA), Va. Code Ann. § 59.1-610, including statutory damages.

3.      For these reasons, Plaintiff seeks relief in this action individually, and on behalf of all other Virginia ticket purchasers for Defendant's Great Wolf Lodge Williamsburg indoor water park for damages, restitution, reasonable attorneys' costs and fees, and injunctive relief under Virginia's Mandatory Fees or Surcharges Law, Va. Code Ann. § 59.1-608, and the Virginia Consumer Protection Act, Va. Code Ann. § 59.1-196 *et seq*.

## **PARTIES**

4.      Plaintiff Sherrie Grant is an individual consumer who, at all times material hereto, was a citizen and resident of Norfolk, Virginia.  Plaintiff Grant purchased a "Water Park Day Pass" to Defendant's indoor water park, Great Wolf Lodge Williamsburg, in Williamsburg, Virginia on January 15, 2026, through Defendant's website, www.greatwolf.com/williamsburg. The transaction flow process she viewed on Defendant's website was substantially similar to that depicted in Figures 1 through 4 in this complaint. *See infra*.

5.      Defendant Great Wolf Resorts, Inc. is incorporated in Wisconsin and has its principal place of business at 350 N Orleans Street, Suite 10000B, Chicago, Illinois 60654.

---

[1] "Clear and conspicuous" or "clearly and conspicuously" means in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." Va. Code Ann. § 59.1-607 (adopting definition from Va. Code Ann. § 59.1-207.45.).

Defendant operates the Great Wolf Lodge Williamsburg indoor water park located in Williamsburg, Virginia.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendant.

7.      This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this district.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District.

## RELEVANT FACTUAL ALLEGATIONS

### *Drip Pricing and Junk Fees*

9.      For years, companies like Defendant have deceived their consumers through drip pricing strategies by advertising low prices, then adding hidden junk fees right before consumers check out.

10.      According to the Federal Trade Commission ("FTC"), "drip pricing" is "a pricing technique in which firms advertise only part of a product's price and reveal other charges later as the customer goes through the buying process."[2] Consumers are shown one price when they initially view a product and then as they check out are barraged with numerous, "Junk Fees" which significantly increase the total cost of a product.

---

[2] https://www.federalregister.gov/documents/2025/01/10/2024-30293/trade-regulation-rule-on-unfair-or-deceptive-fees.

11.     Junk Fees are fees that a seller requires a consumer to pay but are not transparently disclosed to consumers. According to the White House Council of Economic Advisors, Junk Fees "lur[e] in consumers with the promise of a low price, but when they get to the register, they discover that price was never really available." Further, these fees "harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system."[3]

12.     Widespread among ticketed events, research shows that consumers ambushed by hidden fees at checkout pay upward of twenty percent more than when the actual price was disclosed upfront.[4] It is estimated that junk fees cost Americans over $90 billion each year.[5]

13.     Research has shown that consumers spend more money on the same goods when they are not shown the total price up front.[6] Therefore, by omitting Junk Fees from the advertised cost of tickets, companies can reap significantly more profits from every customer who ultimately purchases these tickets with the added junk fees.

14.     Furthermore, the FTC has argued that consumers who wish to compare the true prices of goods incur additional search costs when the full price is not disclosed up front due to the time it takes to click through multiple pages to find the true cost of a product.[7] These search costs cost a consumer time, effort, and money.

---

[3] https://www.whitehouse.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/#_ftnref1.
[4] https://newsroom.haas.berkeley.edu/research/buyer-beware-massive-experiment-shows-why-ticket-sellers-hit-you-with-hidden-fees-drip-pricing/.
[5] https://bidenwhitehouse.archives.gov/briefing-room/statements-releases/2024/04/24/readout-of-white-house-state-legislators-convening-on-junk-fees/.
[6] https://www.federalregister.gov/documents/2023/11/09/2023-24234/trade-regulation-rule-on-unfair-or-deceptive-fees.
[7] https://www.federalregister.gov/documents/2023/11/09/2023-24234/trade-regulation-rule-on-unfair-or-deceptive-fees

15.     By not properly disclosing a price with all fees included, "consumers are forced to incur higher total search and cognitive costs" or "make an incomplete, less informed decision that may result in a more costly [product]."[8]

16.     Drip pricing and junk fees rob consumers of a fair choice when they are selecting a hotel room and ultimately force them to pay a higher price or incur higher search costs than they otherwise would have.

17.     Therefore, the companies who do take part in this deceptive practice, including Defendant, have been rewarded significantly for misleading their customers.

**_Virginia's Mandatory Fees or Surcharges Law_**

18.     On May 2, 2025, Virginia took aim at junk fees, enacting Senate Bill 1212, Virginia's Mandatory Fees or Surcharges Law. SB 1212, which became effective on July 1, 2025, is one of the first laws of its kind in the United States. The law prohibits the "advertise[ment] or display [of] a price for goods or services without clearly and conspicuously[9] displaying the total price, which shall include all mandatory fees or surcharges." Va. Code Ann. § 59.1-608(A). "Mandatory fees or surcharges" includes any additional fee or surcharge that must be paid in order to purchase the good or service being advertised." Va. Code Ann. § 59.1-607. Mandatory fees or surcharges do not include "taxes or fees imposed on the consumer by a government or government-approved entity or assessment fees of a government-created special district or program paid to the government or government-approved entity." _Id._

---

[8] Mary W. Sullivan, Economic Issues: Economic Analysis of Hotel Resort Fees, Bureau of Economics Fed. Trade Comm'n (Jan. 2017), at 16–17, https://www.ftc.gov/system/files/documents/reports/economic-analysis-hotel-resort-fees/p115503_hotel_resort_fees_economic_issues_paper.pdf.
[9] _See_ supra note 1.

19.     Consumers injured by a violation of Virginia's Mandatory Fees or Surcharges Law are entitled to the same remedies as those afforded under the VCPA. Va. Code Ann. § 59.1-610, including statutory damages.

20.     Many states and the federal government have joined Virginia and banned drip pricing practices by ticket sellers. Yet, as discussed below, Defendant has engaged in a sustained campaign of drip pricing, in clear violation of Virginia law.

***Plaintiff's and Customers' Experience with Defendant's Unlawful Hidden Fees***

21.     When a park-visitor, like Plaintiff, visits Defendant's website, www.greatwolf.com/williamsburg, on the main page, they can click the "Day Pass" button to reserve a day pass to Defendant's indoor waterpark in Williamsburg Virginia. *See* Figure 1.

**Figure 1**

22.     Next, customers select the "Get Your Day Pass" button to choose a date and pass type, displaying the prices for each— for example: a "Full Day Pass" costs $40 per person and a "Half Day Pass" costs $32 per person, on January 28, 2026. *See* Figure 2, next page. The total cost of the ticket is not shown on this screen.

**Figure 2**



23.     After a user selects a pass type, she is taken to a screen to select the number of passes she wishes to purchase, and displays "Your Selection" with a Subtotal price: $32 for "1 Half Day Pass." *See* Figure 3, next page. The "total cost" of any ticket, inclusive of fees, is not shown on this screen, in violation of Virginia's Mandatory Fees or Surcharges Law, Va. Code Ann. § 59.1-608. *Id.*

**Figure 3**



24.     *After* a consumer selects the ticket or tickets she wishes to purchase, she can click the "Checkout" button.  She is then taken to the checkout page, which actually includes the total cost of the ticket, including Defendant's $9.99 "Amenity Fee."   *See* Figure 4, next page.

**Figure 4**



25.　　At this point, the ticket price increases from the original price of $32 displayed in Figure 2, and Figure 3, to the $41.99 price on Figure 4.  Defendant's total cost per ticket is disclosed for the first time on this final screen— charging visitors, like Plaintiff, a $9.99 "Amenity Fee."

26.　　Defendant has knowingly employed an illegal hidden fees strategy in blatant violation of Virginia law. The brazenness of Defendant's conduct is exemplified not just by the fact that Defendant, a multi-billion-dollar enterprise with significant legal resources is

undoubtedly aware of Virginia law, but also that Defendant complies with upfront pricing in other states where it operates, such as California.[10]

27.     Complying with Virginia's consumer protection laws is straightforward: a company like Defendant must display and advertise a price of its goods or services that includes all mandatory fees. Defendant could have easily configured its website to list ticket prices inclusive of all mandatory fees. However, Defendant chose not to, precisely to take advantage of the fact that hiding the mandatory fees at the initial stages increases conversions from click-through browsing to ticket sales, even as it harms consumers, disadvantages compliant competitors, and is illegal.

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action on her own behalf and on behalf of all persons similarly situated as a class action.

29.     Plaintiff seeks to represent a Class defined as:

> All citizens of Virginia who, while in the Commonwealth of Virginia and within the applicable statutory period, up to and including the date of final judgment in this action, purchased a ticket to Great Wolf Lodge Williamsburg on a ticketing website operated by Defendant where all mandatory fees were not included in the initially displayed or advertised price of the ticket.

30.     Excluded from the Class are Defendant, its corporate parents, subsidiaries, franchisees and affiliates, officers and directors, any entity in which Defendant has a controlling interest, and the legal representatives, successors or assigns of any such excluded person or entities, and the Court to which this action is assigned. Additionally, excluded is the Judge or Magistrate Judge presiding over this action, their staffs, and their families.

---

[10] *See e.g.* the upfront, total price purchase flow at Great Wolf Lodge - San Francisco / Manteca, CA, another of Defendant's properties, is compliant with Cal. Civ. Code § 1770(a)(29)(A) available at: https://www.greatwolf.com/northern-california/daypass.

31.     Plaintiff reserves the right to amend or modify the Class description with greater specificity or further division into subclasses or limitation to particular issues based upon discovery or further investigation.

32.     Members of the Class are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class number in the tens of thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  The Class may be notified of the pendency of this action by mail, email, and/or publication through the distribution records of Defendant.

33.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to: (a) whether Defendant's hidden amenity fee was a "mandatory fee or surcharge" under Virginia law; (b) whether the Class members were uniformly subjected to a hidden fee; (c) whether Defendant's conduct alleged above violated Va. Code Ann. § 59.1-608; (d) whether Defendant's conduct alleged above violated Va. Code Ann. § 59.1-196 *et seq.*; (e) whether Plaintiff and the Class are entitled to, and the amount of any, damages and/or restitution; and (f) whether Plaintiff and the Class are entitled to attorneys' fees and costs.

34.     The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to disclose the total cost of its tickets, including Defendant's amenity fees, throughout the online ticket purchase process.

35.     Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this

action vigorously.  The interests of Class members will be fairly and adequately protected by

Plaintiff and her counsel.

36.     The Class mechanism is superior to other available means for the fair and

efficient adjudication of the claims of Class members.  Each individual Class member may lack

the resources to undergo the burden and expense of individual prosecution of the complex and

extensive litigation necessary to establish Defendants' liability.  Individualized litigation

increases the delay and expense to all parties and multiplies the burden on the judicial system

presented by the complex legal and factual issues of this case.  Individualized litigation also

presents a potential for inconsistent or contradictory judgments.  In contrast, the class action

device presents far fewer management difficulties and provides the benefits of single

adjudication, economy of scale, and comprehensive supervision by a single court on the issue of

Defendants' liability.  Class treatment of the liability issues will ensure that all claims and

claimants are before this Court for consistent adjudication of the liability issues.

**COUNT I**
**Violation of the VCPA, Va. Code Ann. § 59.1-196 *et seq.***
**(On Behalf Of The Class)**

37.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully

set forth herein.

38.     Plaintiff brings this claim individually and on behalf of the members of the Class

against Defendant.

39.     Plaintiff and the members of the Class are "persons" within the meaning of Va.

Code Ann. § 59.1-198.

40.     Defendant is a "supplier" as defined by Va. Code Ann. § 59.1-198 because it is

engaged in the business of advertising, selling, and offering for sale goods or services to

12

consumers in the Commonwealth of Virginia.

41.    Defendant's sale of admission tickets to Great Wolf Lodge Williamsburg constitutes a "consumer transaction" as defined by § 59.1-198, because it involves the advertisement and sale of goods or services for personal, family, or household purposes.

42.    The VCPA is remedial legislation intended to "promote fair and ethical standards of dealings between suppliers and the consuming public." Va. Code Ann. § 59.1-197.

43.    Defendant engaged in deceptive, misleading, and unfair acts and practices in violation of Va. Code Ann. § 59.1-200, including but not limited to: (1) Advertising admission tickets on its websites with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised, in violation of § 59.1-200(A)(8); and (2) Using deception, false pretense, or misrepresentation in connection with a consumer transaction, in violation of § 59.1-200(A)(14).

44.    Defendant advertised ticket prices for Great Wolf Lodge Williamsburg that did not include all mandatory fees or surcharges. Defendant's online sales platforms displayed deceptively low prices throughout the purchase process while concealing a mandatory "Amenity Fee" that was only revealed on the final checkout screen, after consumers had committed substantial time and effort to the transaction.

45.    Defendant's omission of the mandatory fee was material, as the total price of admission tickets was a primary factor in consumers' purchasing decisions.

46.    Defendant intentionally designed its sales process to mislead consumers by presenting lower initial prices and hiding the true, higher cost of tickets until the end of the checkout process.

47.    Defendant's deceptive conduct had the tendency, capacity, and effect of

misleading reasonable consumers and did in fact mislead Plaintiff and members of the Class.

48.     Plaintiff and the Class reasonably relied on Defendant's representations that the listed price was the full ticket price and were induced to purchase tickets and pay the hidden amenity fee as a result.

49.     Plaintiff and the Class suffered ascertainable losses as a result of Defendant's unlawful conduct, including but not limited to the amount of the undisclosed and unlawful fees paid, the loss of the opportunity to make informed purchasing decisions, and the expenditure of additional time and cognitive effort caused by Defendant's deception.

50.     Defendant's violations of the VCPA were willful, knowing, and intentional, as Defendant knew or should have known of its obligations to truthfully and accurately present the price of admissions tickets under the VCPA and nonetheless continued to advertise and sell tickets using hidden fee, drip-pricing tactics.

51.     Pursuant to Va. Code Ann. § 59.1-204, Plaintiff and the Class seek the greater of their actual damages or statutory damages of $500 per violation (or $1,000 per willful violation), as well as reasonable attorneys' fees and costs.

52.     Plaintiff and the Class further seek equitable relief, including restitution and disgorgement of all unlawfully obtained monies, and such other relief as the Court deems just and proper.

## <u>COUNT II</u>
**Violation of Virginia's Mandatory Fees or Surcharges Law, Va. Code Ann. § 59.1-608.**
**(On Behalf Of The Class)**

53.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

54.     Plaintiff brings this claim individually and on behalf of the members of the Class

against Defendant.

55.     Plaintiff and the members of the Class are "persons," and Defendant is a "supplier" engaged in "consumer transactions" within the meaning of Va. Code Ann. § 59.1-198.

56.     Defendant advertises and sells admission tickets to Great Wolf Lodge Williamsburg to consumers for personal, family, and household use.

57.     Virginia's Mandatory Fees or Surcharges Law, Va. Code Ann. § 59.1-608(A), prohibits any supplier, in connection with a consumer transaction, from "advertising or displaying a price for goods or services without clearly and conspicuously displaying the total price, which shall include all mandatory fees or surcharges."

58.     "Mandatory fees or surcharges" include any additional amount that must be paid in order to purchase the advertised good or service, and exclude only taxes or assessments imposed by a government or government approved entity. Va. Code Ann. § 59.1-607.

59.     Defendant violated § 59.1-608 by advertising and displaying ticket prices that did not include mandatory amenity fees that consumers were required to pay in order to complete a ticket purchase.

60.     At every step of Defendant's online purchase flow, consumers were shown ticket prices that appeared to be complete, yet Defendant added a hidden "Amenity Fee" only at the final checkout page—well after consumers had decided to buy based on the advertised price.

61.     No portion of Defendant's hidden amenity fee was imposed by any government or government-approved entity. The fee was entirely created and retained by Defendant for its own benefit.

62.     Defendant's failure to include mandatory fees in its displayed prices rendered its price advertisements false, misleading, and deceptive, and deprived consumers of the ability to

compare true prices or make informed purchasing decisions.

63. Defendant's unlawful omission was material and caused injury to Plaintiff and the Class, including: payment of unlawful, undisclosed fees, loss of the opportunity to make informed purchasing choices; and time and effort wasted navigating Defendant's misleading checkout process.

64. Pursuant to Va. Code Ann. § 59.1-610, a violation of § 59.1-608 constitutes a prohibited practice under the Virginia Consumer Protection Act and is subject to all enforcement provisions and remedies provided by Va. Code Ann. §§ 59.1-196 *et seq*.

65. Defendant's violations were willful and knowing. Defendant, a sophisticated national entertainment company, knew or should have known of the requirements of Virginia's Mandatory Fees or Surcharges Law requirements, which took effect July 1, 2025, yet continued to use drip-pricing tactics and hidden amenity fees designed to mislead consumers and inflate profits.

66. As a direct and proximate result of Defendant's conduct, Plaintiff and Class suffered ascertainable losses and seek: Restitution and disgorgement of unlawfully obtained monies; the greater of actual damages or statutory damages of $500 per violation, or $1,000 per willful violation, under §§ 59.1-610 and 59.1-204; and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the members of the Class, pray for judgment as follows:

(a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

16

(b)     For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)     For compensatory and statutory damages in amounts to be determined by the Court and/or jury;

(e)     For prejudgment interest on all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary relief;

(g)     For injunctive relief as pleaded or as the Court may deem proper; and

(h)     For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit.

Dated: January 26, 2026                    **BURSOR & FISHER, P.A**.

                                           By: ___*/s/ Philip L. Fraietta*___
                                                    Philip L. Fraietta

                                           Philip L. Fraietta
                                           50 Main Street, Suite 475
                                           White Plains, NY 10606
                                           914-874-0710 (tel)
                                           914-206-3656 (fax)
                                           pfraietta@bursor.com

                                           **BURSOR & FISHER, P.A**.
                                           Julian C. Diamond
                                           1330 Avenue of the Americas, 32nd Floor
                                           New York, New York 10019
                                           Telephone: (646) 837-7150
                                           Facsimile: (212) 989-9163
                                           E-Mail: jdiamond@bursor.com

                                           *Attorneys for Plaintiff*